IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES E. DUNMORE, ) | |
| No. R64188, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:15-cv-00706-SMY |
| ) | |
| STEPHEN B. DUNCAN, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

James E. Dunmore is currently incarcerated at the Lawrence Correctional Center in Sumner, Illinois. Proceeding *pro se*, Plaintiff Dunmore has brought a civil rights action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated during a strip search and cell shakedown conducted by the Orange Crush Tactical Team at Lawrence in July 2014. Among the 104 named defendants are Donald Stolworthy, the Director of the Illinois Department of Corrections; Joseph Yurkovich, the Chief of Operations for the Illinois Department of Corrections; and Stephen Duncan, the Warden of Lawrence. Dunmore has also named the corrections officers who were members of the Orange Crush teams assigned to search Lawrence, Menard, Illinois River and Big Muddy River correctional centers (*see* Doc. 1, pp. 3-5). There is also an "Unknown Party" placeholder for members of the Orange Crush teams that Plaintiff could not identify before filing his complaint. Dunmore seeks injunctive relief, as well as compensatory and punitive damages.

This matter is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court shall review a "complaint in a civil action

in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

## Background

Dunmore is 76 years old and confined to a wheelchair. His housing unit at Lawrence was searched by a team of Orange Crush officers. Upon entering his housing wing, the officers began making loud noises and hitting their batons on the walls, tables, doors and railings. Two of the Orange Crush officers lined up in front of Dunmore's cell and told him to get "asshole naked!" (Doc. 1, p. 5). It took Dunmore a while to comply with the directive—presumably because he is wheelchair bound—so he was threatened with segregation. Plaintiff was then directed to spread his buttocks and lift up his genitals. The officer then ordered Plaintiff to use his hands to search his own mouth for contraband. When Plaintiff asked to wash his hands before touching his mouth, the officers yelled obscenities and again threatened segregation. Some of the officers watching the search were female, adding to Plaintiff's humiliation.

After the search was finished, the officers directed Dunmore to dress in pants, a shirt and boots, but did not permit him to put on underwear. Plaintiff was then handcuffed tightly and in a painful stress position, with his palms facing outward and his thumbs pointing upward. Again, obscenities were shouted and threats of segregation were made. Plaintiff and other inmates were directed to keep their backs to the officers and their heads down, as the officers hit their hands with their batons, chanting "punishing the Plaintiff" (Doc. 1, p. 6).

As the inmates were lined up, an Orange Crush officer grabbed Plaintiff by the back of

the head and slammed Plaintiff's head into the back of the prisoner in front of him. The impact was so great that Plaintiff's spine was altered and a resulting bone fragment caused pain and numbness to radiate down Plaintiff's right arm and hand.

The inmates were lined up, each bent over with his head in contact with the next inmate's buttocks—which the Orange Crush referred to as "nuts to butts" (Doc. 1, p. 7). Officers threatened violence if they saw daylight between inmates as they all proceeded out of the housing unit. Inmates were also told not to ask for medical treatment, water, or to use the restroom, because those requests would be denied. They were told to "take it like men" if their cuffs were too tight—or they would be dragged to segregation (Doc. 1, p. 7).

As the line of inmates was leaving, Plaintiff was "violently yanked" out of line and taken to the shower area (Doc. 1, p. 7). Plaintiff was told to put his face to the wall, and he was left that way for hours—he urinated and defecated on himself. From time to time an Orange Crush officer would yell "This is punishment for all your sins." (Doc. 1, p. 7). Other officers laughed at Plaintiff and told him they did not care about the inmates in wheelchairs. Plaintiff sat, soiled, in the shower area for the rest of the day.

When Plaintiff returned to his cell, he found that it had been "tossed" (Doc. 1, p. 8). Non-contraband items were taken, including legal documents. Shakedown property receipts were not left, which Plaintiff asserts was part of a policy to keep secret the identities of the Orange Crush officers. When Plaintiff asked to speak to the warden, an officer laughed and told him that the warden knew what was occurring at the facility.

Plaintiff remained in pain after his head and neck injury, but his request for medical care was denied, even after he had returned to his cell. Officers merely told him to submit a grievance.

Similar searches were conducted by the Orange Crush at other institutions, Menard, Illinois River and Big Muddy River correctional centers. Dunmore asserts that both the strip search and movement of inmates were purposefully conducted in a humiliating manner. He also says that officers executed the shakedown procedures pursuant to a policy or practice that was implemented, overseen and encouraged by Department of Corrections' supervisors," including Yurkovich and Duncan.

### Discussion

The Court will begin with a preliminary note concerning the handling of Orange Crush cases in the Southern District of Illinois. Dunmore's complaint here closely tracks the pleading in *Ross v. Gossett*, Case No. 15-cv-309-SMY-PMF, which was filed in this Court on March 19, 2015. The plaintiff in *Ross* is seeking injunctive relief and damages on behalf of himself and a class of prisoners that were subjected to similar strip searches while incarcerated at Lawrence and three other Illinois prisons during 2014. Should the *Ross* class be certified, Dunmore would likely be a member of the class, although Dunmore has claims specific to his disability.

With that point out of the way, the Court will evaluate Dunmore's complaint pursuant to 28 U.S.C. § 1915A. In his complaint, Dunmore lists five discrete causes of action and a broad assertion that statutes specifically protecting the disabled have been violated, all of which are set out below.

> **COUNT 1:** Eighth Amendment claim against all Defendants for inflicting unnecessary physical and emotional pain and suffering upon Plaintiff during the strip search, shakedown, and related actions.
>
> **COUNT 2:** Conspiracy under 42 U.S.C. § 1983, in that Defendants agreed to deprive Plaintiff of his constitutional rights and protect one another from liability.
>
> **COUNT 3:** Eighth Amendment claim for failure to intervene to prevent the violation of Plaintiff's constitutional rights.

**COUNT 4:** Violation of the Prison Rape Elimination Act, 42 U.S.C. § 15607.

**COUNT 5:** Intentional infliction of emotional distress under Illinois state law.

**COUNT 6:** Violation of the American with Disabilities Act of 1990, 42 U.S.C.A. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. §§ 794-94e, and the Civil Rights of Institutionalized Persons Act of 1980, 42 U.S.C. § 1997 *et seq*.

Given the similarity between Dunmore's complaint and the complaint in *Ross*, the fact that the complaint in *Ross* was permitted through screening, and the fact that a motion to dismiss is pending in *Ross* but not yet decided, the Court is of the opinion that the above counts cannot be dismissed at this time. The complaint will be allowed to proceed. However, the Court stresses that the defendants are not precluded from moving to dismiss the complaint or portions of it for the reasons articulated in the *Ross* motion to dismiss (or for any other reasons).

The Court would be remiss if it did not acknowledge that absent a conspiracy and/or class action, it is unlikely Plaintiff Dunmore can proceed against all 104 named defendants, for lack of standing—but that is all for another day.

One final note concerning the Unknown Party Orange Crush officers: these officers must be identified with particularity before service of the complaint can occur on them. Where a prisoner's complaint states specific allegations describing the conduct of unknown corrections officers sufficient to raise a constitutional claim against them, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir.2009). In this case, guidelines for discovery aimed at identifying the unknown parties will be set by the magistrate judge. Once the unknown Orange Crush officers are identified, Cortes shall file a motion to substitute the named individuals with the Unknown Party officer designations.

**Disposition**

**IT IS HEREBY ORDERED** that Plaintiff's complaint shall proceed through screening.

The Clerk of Court shall prepare for all named Defendants: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown Party defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. It is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 27, 2015**

<u>**s/ STACI M. YANDLE**</u>
**United States District Judge**
